UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                         EASTERN DIVISION


ROSALIE HORTON,                    )
                                   )
            Plaintiff,             )
                                   )
      vs.                          )     Case No. 4:05-CV-933 DDN
                                   )
JO ANNE B. BARNHART,               )
Commissioner of Social Security,   )
                                   )
            Defendant.             )

                           **MEMORANDUM**

    This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff Rosalie Horton for disability benefits under Title II of the Social Security Act (the Act), 42 U.S.C. § 401, et seq., and Title XVI of the Act, 42 U.S.C. § 1381, et seq. The parties consented to the authority of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 8.)

                         **1.  Background**

    In an application for benefits dated February 10, 2003, plaintiff alleged that her disability began on August 21, 1997, at age 41, on account of congestive heart failure due to mitral valve regurgitation[1] and hypertension. She lives with her son. (Tr. 41-43.)

    Following an evidentiary hearing on June 9, 2004, an administrative law judge (ALJ) denied benefits. (Tr. 11-17.) Because the Appeals Council denied review of the ALJ's decision, it became the final decision of the Commissioner for review in this action.

---

    [1]Mitral valve regurgitation occurs when the mitral valve on the left side of the heart does not close properly and allows blood to leak backwards into the heart. This causes the heart to work harder to pump the extra blood out of the heart. Webmd.com/hw/heart_disease/ aa143445.asp. (Last visited September 5, 2006.)

## 2. General Legal Principles

The court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that detracts from, as well as supports, the Commissioner's decision. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). So long as substantial evidence supports that decision, the court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment which would either result in death or which has lasted or could be expected to last for at least 12 months. See 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A). A five-step regulatory framework governs the evaluation of disability in general. See 20 C.F.R. §§ 404.1520, 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (describing the five-step process); Fastner v. Barnhart, 324 F.3d 981, 983-84 (8th Cir. 2003). If the Commissioner finds that a claimant is disabled or not disabled at any step, the next step is not reached. 20 C.F.R. § 404.1520(a)(4).

Here the ALJ determined that plaintiff could perform her past relevant work, at Step 4 in the process. The burden is on the plaintiff to show that she cannot perform her past relevant work. Goff v. Barnhart, 421 F.2d 785, 790 (8th Cir. 2005).

## 3. The ALJ's Decision

In a June 25, 2004 decision denying benefits, the ALJ found plaintiff suffers from mitral valve prolapse, congestive heart failure, hypertension, and fibroid tumors. The ALJ found that these conditions

did not equal the severity level required by the Commissioner's listing of disabling impairments, and did not preclude her from performing her past relevant work. (Tr. 15.)

The ALJ found that plaintiff's subjective complaints were not fully credible, and found that she had the RFC to perform a wide range of medium level work,[2] or work involving lifting 50 pounds occasionally and 25 pounds frequently. (Tr. 15-16.)

The ALJ found that plaintiff was capable of performing her past relevant work of hairdresser, home attendant, short-order cook, and fry cook, and she was, therefore, not disabled. (Tr. 17.)

### 4. Plaintiff's Grounds for Relief

Plaintiff argues that the decision of the ALJ is not supported by substantial evidence. More specifically, she argues that the ALJ erred (1) when she failed to fairly develop the record and failed to consider plaintiff's RFC under the standards in Singh v. Apfel, 222 F.3d 448 (8th Cir. 2000) and Lauer v. Apfel, 245 F.3d 700 (8th Cir. 2001); (2) when she failed to properly consider subjective complaints under the standards contained in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1994); and (3) the hypothetical question posed to the VE did not include the concrete consequences of plaintiff's impairments.

### 5. Discussion

#### a. Ground 1: Plaintiff's Residual Functional Capacity

The RFC is "the most [plaintiff] can still do despite" his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). When determining plaintiff's RFC, the ALJ must consider "all relevant evidence" but ultimately, the determination of the plaintiff's RFC is

---

[2]Medium level work is defined as:

> (c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1567(c).

a medical question.  <u>Lauer</u>, 245 F.3d at 704.  As such, the determination of plaintiff's ability to function in the workplace must be based on some medical evidence.  <u>Id.</u>; <u>see also</u> <u>Nevland v. Apfel</u>, 204 F.3d 853, 858 (8th Cir. 2000).

The ALJ found plaintiff's impairments limited her RFC as follows: "She can perform a full range of medium exertional-level work, or work involving lifting 50 pounds occasionally and 25 pounds frequently." (Tr. 17.)

Plaintiff argues that the ALJ did not consider her anxiety, right shoulder complications, or knee pain.

When rendering his decision, the ALJ considered the medical evidence and found no objective medical evidence suggesting conditions that precluded work.  The ALJ noted that her February 2003 chest x-rays were normal, and her 2003 electrocardiogram was essentially normal, showing only moderate mitral regurgitation and mild tricuspid regurgitation.  A July 12, 2002, stress test was normal.  Plaintiff had no documented heart related complaints in two years, and her hypertension was well-controlled.  Overall, he found that all of her conditions appeared to be well controlled and no limitations had been imposed upon her by her physicians.  The ALJ further noted that x-rays taken of plaintiff's knees and shoulders in 2004 were normal with no significant arthritic changes.  (Tr. 15.)

There is substantial medical evidence on the record as a whole supporting the ALJ's RFC determination.  Continually, examining medical staff did not impose limitations on her physical daily activities. Several objective medical tests support the ALJ's conclusion. Plaintiff's hypertension was controlled with medication, and her chest x-rays showed a normal size heart with no active disease, and her lungs were clear.  Further, x-rays of her shoulder and knees showed mild

arthritis with no other problems.[3] She controls this pain with over the counter medication. The ALJ properly evaluated the medical evidence.

Plaintiff argues that the ALJ failed to consider her anxiety diagnosis. On October 21, 2002, plaintiff visited the Pine Lawn Center, and an unknown health care provider diagnosed her with anxiety and prescribed Lorezepan.[4] (Tr. 89.) While the ALJ did not mention plaintiff's anxiety, this is not fatal to his decision. There is no indication from the record that plaintiff suffers from debilitating anxiety. No other doctor diagnosed her with anxiety, nor mentioned that it limited her activities in any way. Plaintiff did not mention in her testimony that she suffers from anxiety. Therefore, the ALJ did not err when finding this diagnosis not credible.

Plaintiff argues that the ALJ failed to fully develop the record, and that he had a higher duty to do so since she was unrepresented. Specifically, plaintiff argues that the ALJ failed to clarify the opinion of her treating physician. She argues that the "decision apparently concluded the entries from her treating physician's were somewhat cursory."

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). A claimant's unrepresented status does "enhance the ALJ's duty to bring out the relevant facts." Highfill v. Bowen, 832 F.2d 112, 115 (8th Cir. 1987). "Although that duty may include re-contacting a treating physician for clarification of an opinion, that duty arises

---

[3]Treatment notes from July 12, 2002, October 21, 2002, and February 2, 2003, indicate plaintiff's hypertension was well-controlled. (Tr. 89, 108-09, 112-13.) X-rays of her knees and shoulder showed mild arthritis with no dislocation or fractures. (Tr. 142-43.) On February 1, 2000, a chest x-ray showed a normal heart (Tr. 136), and a February 3, 2003, chest x-ray, showed that her lungs were free of active infiltration or consolidation, and her cardiac silhouette and pulmonary vascular markings were normal (Tr. 135). There was no evidence of active disease in the chest. (Tr. 135.)

[4]Lorezepan is used to treat anxiety. Webmd.com/drugs. (Last visited September 5, 2006.)

only if a crucial issue is undeveloped." <u>Ellis</u>, 392 F.3d at 994. The ALJ need not seek additional medical evidence if the existing evidence provides a sufficient basis for a decision. <u>Stormo v. Barnhart</u>, 377 F.3d 801, 806 (8th Cir. 2004).

Here, plaintiff has not shown that medical evidence is missing or that any critical issue is undeveloped. She does not identify who needs to be re-contacted. The ALJ, at the hearing, questioned plaintiff about her heart, her knees, and her shoulder, her daily activities, and any medication she was on. <u>See</u> <u>Wingert v. Bowen</u>, 894 F.2d 296, 298 (8th Cir. 1990) (when "ALJ carefully and conscientiously elicited the facts from the petitioner," he adequately developed the record). There is nothing in the ALJ decision that suggests she found the plaintiff's treating physician's opinions cursory.

**b. Ground 2: Plaintiff's Subjective Complaints**

Plaintiff also argues the ALJ failed to properly consider her subjective complaints.

The ALJ also did not err when discrediting plaintiff's subjective complaints. "The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians . . . ." <u>Polaski</u>, 739 F.2d at 1322. Factors to be considered include the claimant's daily activities, the duration, frequency, and intensity of the pain, any precipitating factors, whether the claimant has been taking pain medication and the dose, and functional restrictions. <u>Id.</u>; <u>Depover v. Barnhart</u>, 349 F.3d 563, 566 (8th Cir. 2003). The ALJ may not discredit subjective complaints based solely on personal observation. <u>Polaski</u>, 739 F.2d at 1322. "Subjective complaints may be discounted if there are inconsistencies in the record as a whole." <u>Singh</u>, 222 F.3d at 452. "An ALJ who rejects such complaints must make an express credibility determination explaining the reasons for discrediting the complaints." <u>Singh</u>, 222 F.3d at 452.

Here, the ALJ did not specifically cite <u>Polaski</u>, but, nevertheless considered the appropriate factors. Despite the fact that the ALJ

stated that laying down, watching television, and doing housework during the day constituted a "wide breadth of daily activities" (Tr. 16), which this court has some reservation in agreeing with, there is substantial evidence on the record supporting the ALJ's conclusions that plaintiff's subjective complaints were not supported by the medical record and were not consistent with disabling pain.

Plaintiff did not take strong prescription strength medication for her pain. "[A] claimant's failure to take strong pain medication is 'inconsistent with subjective complaints of disabling pain.'" Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996) (quoting Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994)). Plaintiff alleges that she spends her days laying down, watching televison, and doing some light housekeeping. However, no doctor placed any limitations on her daily activities. See Curran-Kicksey v. Barnhart, 315 F.3d 964, 969 (8th Cir. 2003) (no doctor recommended that plaintiff needed to spend her days lying down).

Further, the medical evidence does not support plaintiff's complaints of disabling conditions. Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (lack of medical evidence contradicted plaintiff's complaints of disabling pain). Her most recent x-rays of her chest, lungs, knees, and shoulder were normal and showed no disabling conditions that would cause great pain. (Tr. 135.) At least one health professional suggested exercise to plaintiff as a way to lose weight, suggesting that activity would not affect her heart problems or arthritis negatively. (Tr. 112-13.) No objective medical test suggests plaintiff has a condition which would render her unable to work.

**c. Ground 3: Hypothetical posed to the VE**

Plaintiff also argues that the ALJ did not pose a hypothetical question to the VE that captured the concrete consequences of plaintiff's impairments, and therefore, the VE's testimony is not substantial evidence upon which the decision may rest.

"Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." Grissom v. Barnhart, 416 F.3d 834, 837 (8th Cir. 2005) (quoting Tucker

v. Barnhart, 363 F.3d 781, 784 (8th Cir. 2004)).  "The hypothetical question must include all the claimant's impairments supported by substantial evidence in the record as a whole."  However, it does not need to include those impairments that the ALJ does not find credible. Grissom, 416 F.3d at 837 (mental conditions, if supported by the record, must be considered by VE); Goff, 421 F.3d at 794.

"[T]estimony of a vocational expert is required only if and after the burden shifts to the Secretary."  Barrett v. Shalala, 38 F.3d 1019, 1024 (8th Cir. 1994).  Here, the ALJ found that the plaintiff could perform the past relevant work.  The VE testified that, after hearing plaintiff's testimony,[5] she could perform her past relevant work, both as she actually performed and how it is performed in the national economy.  (Tr. 152-53.)  This testimony is relevant to the ALJ's decision that she could perform her past relevant work.

Therefore,

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed under Sentence 4 of 42 U.S.C. § 405(g). An appropriate order is issued herewith.

/s/ David D. Noce

**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 25, 2006.

---

[5]Plaintiff testified that her daily activities include watching television, sitting on the porch, laying down, and doing housework. She washes dishes, dusts, and does the laundry. She testified that she sometimes cooks, and drives to the grocery store, doctor, and church. She sleeps a couple hours at a time and then wakes up because of her shoulder pain. She sleeps a total of five hours per night. She does not take naps, although she does lay down for an hour at a time three or four times a day. (Tr. 150-52.)